IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **IRA MOORE,** | : | CIVIL ACTION |
| *Plaintiff,* | : | |
| v. | : | NO. 21-05302 |
| | : | |
| **JANE DOE, et al.,** | : | |
| *Defendants.* | : | |

**MEMORANDUM**

Kenney, J.                                                                                                May 2, 2022

I. **BACKGROUND**

   A. **Factual Background**

In his Amended Complaint, Plaintiff Ira Moore alleges that on December 2, 2019, he was arrested by Defendant Officers Jane Doe and John Does Numbers 1 and 2 (together the "arresting officers") after a female relative called the police. ECF No. 17 ¶ 14. Plaintiff claims that while handcuffed, and just outside the 18th District Police Station, Defendant Jane Doe "sucker punched" him in the left ear with a blunt object causing him to black out and rupturing his left ear drum. *Id.* ¶¶ 15–16. Defendants John Does Numbers 1 and 2 allegedly laughed at Plaintiff's injury. *Id.* ¶ 19. Plaintiff further claims that this incident of violence is an example of the "well-known […] systemic custom, policy and practice within the City of Philadelphia Police Department of supervisory police officers failing to assist, or to intervene and/or stop the unlawful and unjustified assault of African-American men by white police officers" and that City officials are "well-aware" of this issue due to "racial politics[.]" *Id.* ¶ 23.

Plaintiff complained of "a great amount of pain and suffering" and was subsequently transported to Defendant Mercy Catholic Medical Center's emergency room. *Id.* ¶ 25.

Defendants Cheryl McKnight, CRNP, and Mark Gibson, RN, examined Mr. Moore. *Id*. Plaintiff claims that, during this examination, Defendants John Does Numbers 1 and 2 "interfered" and told the medical practitioners that Mr. Moore was "faking an injury." *Id*. ¶ 26. Mr. Moore claims that the medical examination was ended due to this interference. *Id.* ¶ 29. A few days later, Mr. Moore was transported to the Philadelphia Prison System, where he allegedly was diagnosed with a ruptured left ear drum and hearing loss during a "thorough" medical examination. *Id*. ¶ 30.

### B. Procedural History

On December 2, 2021, Plaintiff submitted his complaint against the City of Philadelphia, Mark Gibson, Cheryl McKnight, Mercy Catholic Medical Center, and a few unnamed police officers. ECF No. 1. On January 19, 2022, Defendants Ms. McKnight, Mr. Gibson, and Mercy Catholic Medical Center filed their First Motion to Dismiss for Failure to State a Claim. ECF No. 5. On February 3, 2022, the Court denied that Motion as moot due to representations made to the Court by the City of Philadelphia that Mr. Moore would soon be filing an Amended Complaint to address the deficiencies. ECF No. 16. On February 13, 2022, Plaintiff submitted his First Amended Complaint against the same Defendants. ECF No. 17 (hereinafter "Amended Complaint"). Plaintiff asserts these claims in his Amended Complaint: violation of § 1983 against Officer Jane Doe (Count I); violations of § 1983 against the City of Philadelphia (Count II); medical malpractice against Mercy Catholic Medical Center, Ms. McKnight and Mr. Gibson (Count III); violation of constitutional, civil, and other rights against John Doe Numbers 1 and 2 (Count IV); conspiracy against all Defendants (Count V); intentional infliction of emotional distress against all Defendants (Count VI); and demand for judgment, damages, and punitive damages. ECF No. 17.

On February 17, 2022, Defendants Ms. McKnight, Mr. Gibson, and Mercy Catholic Medical Center filed their Second Motion to Dismiss for Failure to State a Claim regarding the

claims against them for punitive damages, conspiracy, and intentional infliction of emotional distress. ECF No. 19.[1] On March 23, 2022, the Court granted the Motion to Dismiss on those claims as to those Defendants with prejudice. ECF No. 27.

On March 7, 2022, Defendant City of Philadelphia filed its Motion to Dismiss on violations of § 1983 (Count II), conspiracy (Count V), and intentional infliction of emotional distress (Count VI), which is presently before the Court. ECF No. 21.

## II.   STANDARD OF REVIEW

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Additionally, "[a] pleading that offers 'labels and conclusions' ... will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations omitted). The Court accepts all factual allegations made by Plaintiff in the Amended Complaint as true and construes such allegations in the light most favorable to the Plaintiff to determine if Plaintiff may be entitled to relief. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

---

[1] Those Defendants also submitted a Motion to Strike Plaintiff's Certificates of Merit on February 16, 2022. ECF No. 28. The Court denied the Motion to Strike on March 23, 2022. ECF No. 28.

### III.    DISCUSSION

#### A.  Failure to Train/Supervise under § 1983 (Count II)

The City claims that Plaintiff's alleged facts are insufficient to support a theory of municipal liability under § 1983 for failure to train/supervise its police officers. ECF No. 21-2 at 3. Other than conclusory assertions of a systemic problem and failure to meaningfully train and discipline white officers who assault African-American men, the City claims that the Amended Complaint is devoid of any facts supporting such a theory. *Id*.

Plaintiff responds that he has plausibly pled liability under § 1983 by demonstrating a link between the City's custom, policy or practice and the injury that he suffered. ECF No. 25 at 9. Plaintiff claims this practice is so "permanent and well-settled" that it constitutes law. *Id*. Plaintiff urges the Court to treat its lawsuit against police officers in their official capacity as a suit against the entity of Philadelphia Police Officers. *Id*.

There are only three factual allegations asserted in the Amended Complaint that have any relevance to Plaintiff's § 1983 claim against the City of Philadelphia. First, Plaintiff claims supervisory police officers witnessed Defendant Jane Doe punch Plaintiff and did not assist or intervene. ECF No. 17 ¶¶ 20–21. Second, Plaintiff makes a lengthy accusation of systemic issues regarding white police officers' treatment of African-American men due to policymakers' fear of opposition from the "Republican white male dominated police union[.]" *Id*. ¶ 23. Finally, Plaintiff makes a similarly broad, lengthy accusation that the City's elected officials promote a systemic policy and practice that fails to discipline white officers who assault African-American men, which encourages such unjustified assault. *Id*. ¶ 24. Notably, Plaintiff quotes the conclusory statements from his Amended Complaint in his Response to Defendant's Motion *multiple times* but adds no other facts in support of liability against the City. ECF No. 25 at 9, 11,

12. Plaintiff here failed to plead any facts particular to this case or the City of Philadelphia that could plausibly show *Monell* liability against the City under § 1983.

It is well-established that supervisory liability cannot be imposed under § 1983 on a respondeat superior theory. *See e.g.*, *Ashcroft v. Iqbal,* 556 U.S. 662 (2009); *Monell v. Department of Social Services,* 436 U.S. 658 (1978); *Rizzo v. Goode,* 423 U.S. 362 (1976); *Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir. 2007); *Durmer v. O'Carroll,* 991 F.2d 64, 69 n. 14 (3d Cir.1993); *Hartmann v. Carroll*, 929 F. Supp. 2d 321, 327 (D. Del. 2013), *aff'd*, 582 F. App'x 111 (3d Cir. 2014). Further, "[a] municipality cannot be held liable solely because it employs a tortfeasor." *Monell*, 436 U.S. at 691. "Instead, the plaintiff must assert that an actual policy or custom of the municipality was the cause of the constitutional deprivation." *Gwynn v. City of Philadelphia*, 866 F. Supp. 2d 473, 488 (E.D. Pa. 2012), *aff'd,* 719 F.3d 295 (3d Cir. 2013) (citing *Monell*, 436 U.S. at 691).

If asserting a policy, plaintiff is required to identify the policy to ensure that "a municipality is held liable only for those depravations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Board of Cty. Com'srs of Bryan Cty., Okl. v. Brown,* 520 U.S. 397, 403–04 (1997). "Official policy often refers to formal rules or understandings—often but not always committed to writing—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986). Thus, the only way for Plaintiff's municipal liability claim to survive a motion to dismiss in the § 1983 context, Plaintiff must plausibly plead an existing,

unconstitutional municipal policy that is attributed to a municipal policymaker and that this policy caused Plaintiff's injury. No such facts are alleged in Plaintiff's Amended Complaint.[2]

"A policy can also exist, however, when the municipal agency affirmatively decides to not engage in a specific action." *Washington-Pope v. City of Philadelphia*, 2015 WL 7450522, at *11 (E.D. Pa. Nov. 24, 2015). A policy or custom may be found where "the policymaker has failed to act affirmatively at all" and "the inadequacy of existing practice so likely to result in a violation of constitutional rights, that the policy maker can reasonably be said to have been deliberately indifferent to the need." *Natale v. Camden Cty. Correctional Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (internal marks omitted). Again, no such facts are alleged in Plaintiff's Amended Complaint that the inadequacy of existing practice is so likely to result in a violation of constitutional rights that the City of Philadelphia was deliberately indifferent to the need. Outside of broad statements making allegations of general police violence, Plaintiff makes no specific mention of policymakers in the City of Philadelphia, makes no mention of existing practice and its flaws, and makes no factual allegations of deliberate indifference.

Without a policy, plaintiff may identify a custom where the plaintiff alleges that the "practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Gwynn*, 866 F. Supp. 2d at 488 (quoting *Monell*, 436 U.S. at 691) ("A municipal custom is a 'persistent and widespread' practice of municipal action that is 'so permanent and well settled as to constitute a custom or usage with the force of law.'"). Not only does Plaintiff fail to plead any facts that would indicate a persistent and widespread practice of police officers punching arrestees in Philadelphia, Plaintiff includes no facts alleging a custom

---

[2] Plaintiff makes no attempt even to provide factual allegations referencing the conduct time, place, and persons responsible for any official municipal policy or custom. *See Torres v. City of Allentown*, 2008 WL 2600314, at *5 (E.D. Pa. June 30, 2008).

is accepted and so permanent as to carry with it the force of law. As Defendant explained at length in its Motion, these factual deficiencies cannot allow Plaintiff's claim to survive, even at the pleadings stage. ECF No. 21-2 at 4–6, 5 fn.1, 7, fn.2.

Plaintiff only plausibly pleads the single instance of his own mistreatment and injury. However, "[p]roof of a single instance of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Okla. City v. Tuttle,* 471 U.S. 808, 820 (1985); *see also Brown v. City of Pittsburgh,* 586 F.3d 263, 292 (3d Cir. 2009); *Wilson v. Cook Cty.*, 742 F.3d 775, 780 (7th Cir. 2014) ("Although this court has not adopted any bright-line rules for establishing what constitutes a widespread custom or practice, it is clear that a single incident—or even three incidents—do not suffice."). There is no reasonable inference to be made that, even if Defendant Jane Doe punched Mr. Moore in the left ear, the City of Philadelphia has a custom, policy, or practice of permitting such conduct or that the City failed to train its officers not to assault arrestees. Certainly, no such facts are sufficiently pled in the Amended Complaint.

Essentially, regardless of which way Plaintiff chooses to present his *Monell* claim, it must allege an official, with power to make municipal policy and/or well-settled custom, acted deliberately and that this action or affirmative inaction was the impetus behind Plaintiff's injuries. *See Green v. Chester Upland School District*, 89 F. Supp. 3d 682, 688 (E.D. Pa. 2015); *Bryan Cty.*, 520 U.S. at 407; *Harris*, 489 U.S. at 389; *Berg v*, 219 F.3d at 275-76; *Kelly v. Borough of Carlisle*, 622 F.3d 248, 263 (3d Cir. 2010). Plaintiff has not alleged facts for any of those elements of a *Monell* claim. Since Plaintiff has been given ample opportunity to do so– through his Complaint, Amended Complaint, and Response to the Motion to Dismiss–the Court

finds no additional opportunity to plead such facts is warranted here and the claims in Count II should be dismissed with prejudice.

### B. Conspiracy Claim (Count V)

While Plaintiff's Amended Complaint appears on its face to include a claim of conspiracy, Defendant points out, and the Court agrees, that it is unclear exactly what conspiracy Plaintiff alleges occurred and who was involved. Plaintiff recites a laundry list of legal terms yet does not specify any factual allegations relating to a conspiracy in his Amended Complaint. ECF No. 17 at 11–12. There is no articulation as to how Defendant City of Philadelphia is involved in any alleged conspiracy relating to the underlying allegations in this case. Plaintiff never describes at what point during the arrest, alleged assault and following medical examination a conspiracy occurred. The vague and conclusory statements made by Plaintiff do not amount to adequate pleadings.

To establish a claim for conspiracy pursuant to Title 42 of the United States Code Section 1983,[3] "a plaintiff must establish (1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 647 (E.D. Pa. 2014) (citing *Gale v. Storti*, 608 F.Supp.2d 629, 635 (E.D. Pa. 2009)). Alleging an actual agreement between co-conspirators is a crucial element of a conspiracy claim under § 1983, and thus to state a claim for conspiracy under § 1983, plaintiff must make "specific factual allegations of

---

[3] In his Amended Complaint, Plaintiff lists §§ 1983, 1985, 1986, and 1988 as potential sources of relief for his conspiracy claim. The Court will only evaluate the sufficiency of the pleadings as to §§ 1983 and 1985. Because the claim under § 1985 fails to pass the plausibility standard, there can be no claim under 42. U.S.C.S. § 1986 because it relies on a preexisting violation of § 1985. Similarly, a claim under § 1988 relies on a viable claim pursuant to §§ 1983 or 1985. Therefore, unless there is pleading sufficient to establish a claim under §§ 1983 or 1985, claims for relief under §§ 1986 and 1988 must also fail.

combination, agreement, or understanding among all or between any of the defendants to plot, plan or conspire to carry out the alleged chain of events." *Hammond v. Creative Financial Planning Org.*, 800 F. Supp. 1244, 1249 (E.D. Pa. 1992) (citing *Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir. 1974)).

Defendant contends that conclusory allegations without properly asserting facts that show a "meeting of the minds" or allow for an inference of a "conspiratorial agreement," fall woefully short of stating a conspiracy claim under § 1983. ECF No. 21-2 at 9 (quoting *Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008)), (quoting *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010)). Defendant asserts that Plaintiff's vague allegations that all Defendants agreed to act to deprive Plaintiff of adequate medical care are insufficient to support this claim.[4] ECF No. 21-2 at 10.

Plaintiff's arguments in his Response are much more difficult to discern. While Plaintiff states the elements of a § 1983 conspiracy claim and the pleading standards set forth in *Twombly*, Plaintiff never actually mentions any factual content or relates the facts within its Amended Complaint to those standards. ECF No. 25 at 13–14. Plaintiff quickly moves on to § 1985(3) where, once again, Plaintiff provides the elements required by law but merely states "Mr. Moore's pleadings make out a Section 1985 conspiracy" and "Mr. Moore has plausibly pled that policy making and supervisory officials, knew of the concerted and unlawful actions of the other Defendants – they participated in the illegal acts – yet undertook no action to end that lawlessness" without referencing any specific factual allegations. ECF No. 25 at 14–15. Plaintiff does add numerous footnotes restating the factual allegations contained in his Amended

---

[4] The Court previously dismissed with prejudice Plaintiff's conspiracy claim against Defendants Cheryl McKnight, Mark Gibson, and Mercy Catholic Medical Center on the grounds that these private medical care providers were not acting under color of state law and do not fall within the exceptions for private citizens to be deemed as agents of the state. ECF No. 27.

Complaint–namely that he was arrested, allegedly punched by a police officer in front of the 18th District Station, and other officers saw the assault occur–but none of these allegations indicate the existence of a conspiracy under § 1983. ECF No. 25 at 15.

In order to bring a claim of conspiracy under § 1985(3), a plaintiff must allege "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (quoting *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828–29 (1983)). At a fundamental level, Plaintiff does not allege, as mentioned above, the existence of an understanding or any actions made in furtherance of a conspiracy.

Next, the provisions in § 1985(3) "apply only where a conspiracy involves racial or otherwise class-based invidiously discriminatory animus." *Steinhardt v. Bernardsville Police Dep't*, 2021 WL 3929321, at *3 (3d Cir. Sept. 2, 2021); *see also Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006). Beyond broad, generic assertions that "there have been numerous white City of Philadelphia police beating of African-American men[,]" Plaintiff did not allege any such race-based animus on behalf of the Defendants in this case. ECF No. 25 at 16. "[A] plaintiff must allege both that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious." *Farber*, 440 F.3d at 135.

Furthermore, Defendants contend that, pursuant to § 1985(3), a municipality and its officials are considered a single entity that cannot conspire with itself and, thus, a municipality is not capable of possessing the invidious discriminatory animus required for a conspiracy claim. ECF No. 21-2 at 11; *see also Doherty v. Haverford Township*, 513 F.Supp.2d 399, 409 (E.D. Pa. 2007); *Scott v. Township of Bristol*, 1990 WL 178556, at *6 (E.D. Pa. Nov. 14, 1990). This Court agrees that Defendant City of Philadelphia cannot conspire with itself or, absent a showing of racially discriminatory policies, possess the race-based animosity required by § 1985(3).

Also, Plaintiff makes no factual allegations whatsoever that the arresting officers were motivated by race discrimination, or that the supervisory officers failed to intervene after the assault due to race, or that Plaintiff did not receive adequate medical care due to racial animus. Even if such allegations were made, there is no connection between these events to Defendant City of Philadelphia.

Finally, Plaintiff seems to be under the misunderstanding that negligence of the supervisory officers who allegedly observed the assault, but did nothing, constitute a conspiracy. It does not. Taking the Plaintiff's allegations in the light most favorable to his claims, Defendant Jane Doe sucker punched Mr. Moore "for no reason" and Defendants John Does Numbers 1 and 2 "simply laughed" in response, while "[o]ther members of the 18th District […] observed[.]" ECF No. 17 ¶¶ 15, 19, 20. Following the punch, "none of the supervisory police officers came to Mr. Moore's assistance or intervened to stop the assault." *Id*. ¶ 21. Later in the emergency room, Defendants John Does Numbers 1 and 2 "interfered" and told medical professionals Plaintiff was "faking an injury." *Id*. ¶ 26. While the Court is uncertain who Mr. Moore believes is involved in this alleged conspiracy, none of the individuals noted above conducted themselves in a manner consistent with a conspiracy. Simply laughing at an assault, while abhorrent as a reaction, does

not show an agreement or an act constituting a conspiracy. The observing, unknown officers did not assault Plaintiff. There is no indication that these officers condoned such assault. After Defendant Jane Doe allegedly punched Plaintiff, there is no assertion that the assault continued or required interference from other individuals. Even so, inaction on behalf of observers does not satisfy the requirement of an act in furtherance of the conspiracy. None of these supervisory officers were involved in Plaintiff's transportation to the emergency room, nor were they involved in Plaintiff's allegedly inadequate medical care. Aside from standing outside near where the assault took place, Plaintiff makes no factual allegations that these other non-party officers had anything to do with this incident. Even regarding the Defendants John Does Numbers 1 and 2, who allegedly intervened in the medical examination, Plaintiff provides no factual basis to support the existence of the essential elements of an agreement and concerted action to establish a claim of conspiracy.

Accordingly, the Court finds Plaintiff's Amended Complaint lacks factual allegations showing an agreement to violate his rights, and thus his conspiracy claims are dismissed with prejudice.

### C. Intentional Infliction of Emotional Distress Claim (Count VI)

The elements of intentional infliction of emotional distress are: (1) a person who by extreme and outrageous conduct (2) intentionally or recklessly causes (3) severe emotional distress to another. *Manley v. Fitzgerald*, 997 A.2d 1235 (Pa. Commw. Ct. 2010). "While Pennsylvania courts recognize a cause of action for intentional infliction of emotional distress, they allow recovery only in very egregious cases." *Reem Haddad v. Tirun A. Gopal*, 2001 WL 35928055 (Pa. Com. Pl. Feb. 13, 2001); *see also McLaughlin v. Rose Tree Media School Dist.*,

52 F. Supp.2d 484, 494 (E.D. Pa. 1999) (stating the conduct "must be so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."). There is nothing in the Amended Complaint that shows extreme or outrageous conduct that rises to the level necessary to plead to such a high threshold. Rarely, if ever, will the assault alleged here or interference with medical aid show that a person acted intentionally or recklessly to cause an individual such severe emotional distress. Further, there is insufficient pleading to show Mr. Moore did in fact suffer from severe emotional distress following his interrupted medical examination, especially since his ruptured ear drum was allegedly diagnosed and treated only a few days later. Accordingly, the Court finds these facts and circumstances as pled do not rise to the level of intentional infliction of emotional distress and must be dismissed with prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court grants Defendant City of Philadelphia's Motion to Dismiss (ECF No. 21) with prejudice on Counts II, V, and VI of Plaintiff's Amended Complaint.

**BY THE COURT:**

/s/ Chad F. Kenney
_____
**CHAD F. KENNEY, JUDGE**